**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 14-cv-02398-CMA

LAURIE SMITH,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ALJ'S DECISION
DENYING SOCIAL SECURITY BENEFITS**

---

This matter is before the Court on review of the Commissioner's decision to deny Plaintiff Laurie Smith's ("Plaintiff") application for supplemental security disability income under Title XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g).

**I.  BACKGROUND**

In July 2011, Plaintiff applied for supplemental security disability income. Plaintiff was born on March 13, 1963, and was forty-five years old on her alleged disability onset date of October 13, 2008. (AR 29.)[1] After her initial application was denied, Plaintiff requested a hearing, which was held on February 7, 2013, before an Administrative Law Judge ("ALJ"). (AR 24.)

---

[1] Citations to the Social Security Administrative Record will be to "AR" followed by the relevant page number.

Plaintiff completed three years of college. (AR 178.) She is not working, but has worked in the past as a School Bus Driver, Driver—Transporting Cars, Office—Clerical Work, and Nursing Assistant. (AR 188.) Plaintiff owns eight animals. (AR 49.) She claims caring for her animals is difficult, but she can "scoop out some food for them [and] put a little water in their bowl." (*Id.*) She can do household chores, but not vacuum. (AR 457.) Plaintiff "cannot dress herself because her brassiere is hard to put on by herself." (*Id.*)

Plaintiff alleges that she suffers from herniated disks in the neck and back, severe depression, severe anxiety, bipolar disorder, panic disorder, manic disorder, suicidal tendencies, and post-traumatic stress disorder. (AR 68.) She described herself as "really big," weighing 270 to 280 pounds and is five feet seven inches tall. (AR 459.) Plaintiff uses marijuana once or twice a week. (AR 458.)

On February 27, 2013, the ALJ issued an unfavorable decision, denying benefits. (AR 24–33.) In applying the five-step sequential evaluation process outlined in 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Plaintiff was disabled, the ALJ determined that:

1. Plaintiff has not engaged in substantial gainful activity since July 8, 2011, the application date. [Step 1]

2. Plaintiff has the following severe impairments: degenerative changes in the cervical and lumbar spine, right shoulder impingement, obesity, anxiety disorder, affective disorder, and personality disorder. [Step 2]

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Step 3]

    4. Plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except for the following restrictions and limitations: Plaintiff can frequently, but not constantly bend, squat, and kneel.  She can occasionally push and pull, but not perform any overhead work.  She can frequently, but not constantly finger and handle.  Plaintiff cannot have any face-to-face contact with the general public, and can only perform simple, repetitive, and routine tasks, defined as SVP 2 or less.  [Step 4]

    5. Plaintiff is unable to perform any past relevant work.  [Step 5]

The Appeals Council denied Plaintiff's request for review.  (AR 2–4.)  On August 28, 2014, Plaintiff filed her appeal of the Commissioner's final decision.  (Doc. # 1.)  Plaintiff filed her opening brief on December 29, 2014, and the Commissioner responded on February 20, 2015.  (Doc. ## 14, 18.)  Plaintiff did not file a reply.

## II.   STANDARD OF REVIEW

This Court's review of the ALJ's determination is limited to determining whether the ALJ's decision is supported by substantial evidence and whether the Commissioner—through the ALJ—applied the correct legal standards.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Wall*, 561 F.3d at 1084.  In reviewing the record and the arguments of counsel, the Court does not reexamine the issues *de novo*, *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that of the Commissioner, *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Thus, even when some evidence may have supported contrary findings, the Court "may not

displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it *de novo*." *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007).

## III.   ANALYSIS

Plaintiff raises three arguments in support of her contention that the ALJ committed errors in rendering his decision.  The Court will address, in turn, the following contentions: (1) the ALJ failed to consider Plaintiff's severe left shoulder impairment; (2) the ALJ erred in assessing Plaintiff's Residual Functional Capacity ("RFC"); and (3) the ALJ failed to properly analyze the lay witness testimony.

### A.   WHETHER THE ALJ ERRED IN FAILING TO CONSIDER PLAINTIFF'S LEFT SHOULDER IMPAIRMENT

Plaintiff argues that the ALJ erred by not including Plaintiff's left shoulder impingement and tear as a severe impairment at step two.  (Doc. # 14 at 13.)  Plaintiff contends this constitutes harmful error because it might have impacted the RFC determination.  (*Id.* at 14.)  However, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (finding harmless error "when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence"). As mentioned, the ALJ found Plaintiff had the following severe impairments: degenerative changes in the cervical and lumbar spine, right shoulder impingement, obesity, anxiety disorder, affective disorder, and personality disorder.  Thus, Plaintiff's

argument regarding step two errors are more properly addressed at step four. *See Dray*, 353 F. App'x at 149 (addressing the plaintiff's step two arguments as they pertained to the ALJ's RFC finding).

**B.    WHETHER THE ALJ ERRED IN ASSESSING PLAINTIFF'S RFC**

Plaintiff claims that "[b]y rejecting the exertional and non-exertional impairments and failing to explain why such impairments were not included in the RFC, the Hypothetical that the ALJ propounded for the [vocational expert] was incomplete and, thus, constitutes harmful error because it would have eliminated all jobs." (Doc. # 14 at 21.) Specifically, Plaintiff argues that although the ALJ gave Dr. Common, a consultative physician, "great weight," he did not indicate why he rejected Dr. Common's testimony that Plaintiff would need increased frequency of breaks every half hour, could only lift less than ten pounds, and could only occasionally and without repetition reach, push, pull, grasp, finger, and handle. (*Id.* at 16.) Further, Plaintiff contends that although the ALJ gave Dr. Frommelt, a consultative physician, "probative weight," he failed to incorporate Dr. Frommelt's findings that Plaintiff had moderate difficulties or was moderately limited in her ability to "work in coordination with or in proximity to others without being distracted by them" and "accept instructions and respond appropriately to criticism from supervisors." (*Id.* at 20–21.)

A hypothetical that an ALJ propounds for the vocational expert "is sufficient when it contains 'all of the limitations found to exist by the ALJ.'" *Brescia v. Astrue*, 287 F. App'x 626, 631 (10th Cir. 2008) (quoting *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000)). An ALJ is not required to accept, *in toto*, any one medical opinion as to

5

limitations, and may properly find, from all the evidence of record, limitations greater than those found by one physician or less than those found by another.  *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.").  Additionally, "[t]he record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)).  The Court does not re-weigh the evidence or substitute its judgment for that of the Commissioner.  *Salazar*, 468 F.3d at 621.

In the instant case, Plaintiff's argument that the ALJ rejected Dr. Common's opinion is inaccurate.  As noted above, the ALJ determined that Plaintiff can perform sedentary work except for several restrictions and limitations.  (AR 28.)  Sedentary wok "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles."  20 C.F.R. § 416.967(a).  Dr. Common opined that Plaintiff can lift less than ten pounds, can "stand and walk for 4 hours each . . . [and] can sit for an unlimited amount of time."  (AR 468.)  Dr. Common's opinion concerning an increased frequency of breaks relates to her opinion that Plaintiff can stand and walk for four hours each.  Her opinion is consistent with the ALJ's RFC finding.  To the extent Plaintiff argues that based on Dr. Common's opinion, the ALJ should have included that Plaintiff can only occasionally—rather than "frequently, but not constantly"—finger and handle, the ALJ is not required to accept, *in toto*, any one medical opinion as to limitations.  Indeed, the

ALJ gave Dr. McElhinney, a consultative physician, "probative weight." (AR 31.) Dr. McElhinney opined that Plaintiff had an unlimited ability to handle, finger, and feel. (AR 77.) Accordingly, the ALJ did not err in considering Dr. Common's opinion.

Further, Plaintiff's argument that the ALJ failed to incorporate Dr. Frommelt's findings that Plaintiff had moderate difficulties or was moderately limited in her ability to conduct numerous tasks is erroneous. For instance, Dr. Frommelt determined that Plaintiff was moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The ALJ's finding that Plaintiff cannot have any face-to-face contact with the general public is consistent with Dr. Frommelt's findings. To the extent Plaintiff believes the ALJ's RFC rejects several of Dr. Frommelt's findings, the ALJ is not required to accept, *in toto*, any one medical opinion as to limitations. Indeed, the ALJ gave the opinion of Dr. Andres, a psychological consultative examiner, "great weight." (AR 31.) Dr. Andres did not place any restrictions or limitations on Plaintiff, other than opining that Plaintiff could use some financial supervision. (AR 100.) Accordingly, the Court is convinced that the ALJ considered all of the evidence in the record and that the hypothetical the ALJ gave the vocational expert contained all the limitations found to exist by the ALJ. The Court does not substitute its judgment for that of the Commissioner. Thus, the ALJ did not err in considering Dr. Frommelt's opinion.

Next, Plaintiff asserts that the ALJ erred because he did not have a psychologist or psychiatrist at the hearing as is required by Program Operations Manual System ("POMS") DI 24510.060(A)(1).  (AR 20.)  However, POMS DI 24510.060(A) does not require testimony at the hearing if there is a psychologist or psychiatrist opinion on a claimant's mental functional capacity included in the record.[2]  In Plaintiff's case, a psychologist—Dr. Frommelt—assessed Plaintiff's mental residual functional capacity, and her opinion is included in the record.  (AR 78–80.)  Accordingly, the ALJ did not err.

Lastly, Plaintiff contends the ALJ erred by not including Plaintiff's left shoulder impingement and tear as a severe impairment at step two.  (Doc. # 14 at 13.)  The ALJ considered evidence in which physicians noted that Plaintiff had left and right shoulder impairment.  (*See e.g.*, AR 77, 267.)  The ALJ considered Plaintiff's shoulder issues in his RFC without specifying whether he was discussing Plaintiff's left or right shoulder.  (AR 27, 29, 30.)  Indeed, all of the ALJ's limitations included in Plaintiff's RFC restrict Plaintiff's use of both of her hands and arms equally.  For instance, the ALJ determined that Plaintiff "can occasionally push and pull, but not perform any overhead work" and "can frequently, but not constantly finger and handle."  These tasks limit Plaintiff's use of both her left and right shoulder.  Accordingly, the Court is convinced that the ALJ considered Plaintiff's left and right shoulder impingement and tear.  Any error in finding the ALJ should have included Plaintiff's left shoulder impingement and tear as a severe impairment is, therefore, harmless.

---

[2] POMS DI 24510.060(A)(2)(a) states the following: "In decisions that are not fully favorable, only a psychiatrist or psychologist is to perform the analysis and decide the mental functional capacity." *DI 24510.060 Mental Residual Functional Capacity Assessment*, SOCIAL SECURITY, http://policy.ssa.gov/poms.nsf/lnx/0424510060 (last visited May 20, 2015).

## C. WHETHER THE ALJ ERRED IN EVALUATING LAY WITNESS TESTIMONY

Plaintiff contends the ALJ erred in analyzing her daughter's testimony. (Doc. # 14 at 22.) Plaintiff asserts that "expert witnesses coincide with and are supportive of her daughter's testimony," and the ALJ failed to show how he evaluated her daughter's testimony. (*Id.*) Plaintiff's daughter testified she saw her mother "once every two months." (AR 55.) She also testified that she did not think her mother could work, and her mother is "out of it all the time." (AR 55–56.)

Social Security Ruling 06–03p clarifies how the Commissioner considers opinions and other evidence from other sources, such as relatives, who are not acceptable medical sources. 2006 WL 2329939 at *2. While only acceptable medical sources can give medical opinions, evidence from other sources, who are not acceptable medical sources, can show the severity of the impairment and how it affects the individual's ability to function. *Id.* at *2. "Adjudicator[s] generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *6. As with medical source opinions, the ALJ should consider the factors set forth in 20 C.F.R. § 404.1527 when determining the weight to assign to an other source opinion. *Id.* at *4–5, 7; *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (same).

In the instant case, the ALJ did consider Plaintiff's daughter's testimony. The ALJ specifically determined that:

> [S]ignificant weight cannot be given to the daughter's testimony because it is inconsistent with the preponderance of the opinions and observations

9

> by medical doctors in this case and because, as the claimant's daughter is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of her testimony is questionable. Further the claimant's daughter cannot be considered a disinterested third party due to her relationship with the claimant.

(AR 31.) This makes clear that the ALJ considered Plaintiff's daughter's testimony, and he decided it would not be given significant weight. The Court does not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Salazar*, 468 F.3d at 621. Further, the ALJ asserted that he considered Plaintiff's daughter's testimony, and the Court's "general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). Therefore, the ALJ did not err in evaluating Plaintiff's daughter's testimony.

## IV.    CONCLUSION

For the foregoing reasons, it is ORDERED that the ALJ's decision is AFFIRMED. Each party shall bear its own costs and attorney's fees.

DATED: May __29__, 2015

BY THE COURT:

_Christine M Arguello_
_____
CHRISTINE M. ARGUELLO
United States District Judge